[File No. 6904.]

FAIRMONT CREAMERY COMPANY, Devils Lake, North Dakota, Respondent, v. WILLIAM J. MURPHY, State Dairy Commissioner in and for the State of North Dakota, Appellant.

(12 NW(2d) 71)

Opinion filed December 1, 1943. Rehearing denied December 24, 1943

*Quentin N. Burdick,* Special Assistant Attorney General, for appellant.

*M. K. Higgins* (Leonard A. Flansburg, Charles H. Flansburg and M. S. Hartman of counsel) for respondent.

BURR, J. The issue involved is presented to us in two appeals—one of which is from the order, judgment, and decree of the district court "that a peremptory writ of mandamus be issued . . . commanding the defendant . . . to revoke the order entered by him

. . . and which declared a forfeiture and revocation of the creamery license of the plaintiff covering its creamery plant at Devils Lake, N. D., and directing the said defendant to reinstate the said Creamery license and to recognize the same as valid."

The decision in this mandamus case disposes of the other appeal. Both involve the construction of § 3 of chap. 8 of the Sess. Laws of 1939, which reads as follows: "Any person engaged in the business of buying any such farm products, for manufacture or sale, who shall discriminate between different sections, localities, communities, cities or villages of this State, by purchasing any such farm products at a higher price or rate in one locality than is paid for such products of the same kind, quality and grade by such person in another section, locality, community, city or village, *or than is paid to another person of the same community,* after making due allowance for the difference, if any, in the actual cost of transportation paid from the locality of purchase to the locality of manufacture or sale, shall be deemed guilty of unfair discrimination, which is hereby prohibited and declared to be unlawful. It shall not be unfair discrimination for any person to pay in any section, locality, community, city or village, a price equal to that actually paid on the same day by any bona fide competitor in such section or locality, for farm products of the same kind and grade, provided such price is paid in a bona fide and good faith effort to meet competition, and in such case the burden of proving such facts shall upon the defendant."

For many years the plaintiff company was engaged throughout the northern part of the state in the business of buying cream for manufacturing purposes, with its manufacturing plant in Devils Lake. It was operating under a license granted by the dairy commissioner of the State, and on August 22, 1942, the commissioner issued this complaint:

"You are hereby charged with willfully and intentionally violating Chapter 8 of the Session Laws of 1939 in that you did on July 17, 1942 pay 40¢ per pound for butterfat contained in two cans of No. 1 sour cream which was shipped to the Fairmont Creamery in Devils Lake, while on the same date you paid 37¢ per pound for butterfat contained in two cans of No. 1 sour cream delivered at the door of the

Fairmont Cream Station, which cream station is directly across from said creamery. This charge is supported by checks issued in payment of said cream by the Fairmont Creamery Company of Devils Lake.

"A hearing on these charges will be held at the office of the State Dairy Commissioner in and for the State of North Dakota on September 21, 1942 at the hour of 2:00 P.M. as specified in the attached notice of hearing.

"You are further notified that if you fail to serve an answer to this complaint upon the said Dairy Commissioner, at least 3 days prior to September 21, 1942, this complaint will be deemed admitted and appropriate action will be taken by the said Dairy Commissioner. You are further notified you may appear in person or by counsel or both in defense of the charges outlined in this complaint."

The plaintiff answered and after a hearing the commissioner found as facts:

"III. That on the 17th day of July, 1942, the Fairmont Creamery Company, a corporation, was operating a cream buying station directly across the street from the said Fairmont Creamery or manufacturing plant, which buying station was under the direct management, control and supervision of the same officers of the Fairmont Creamery Company, who were in charge of the Fairmont Creamery Company manufacturing plant.

"IV. That on July 17, 1942, one Henry Berge sold to the Fairmont Creamery Company at Devils Lake, one can of No. 1 cream and shipped the same to the Fairmont Creamery Company, at Devils Lake, North Dakota; that the pounds net of cream in said can were 40, the test was 41, the pounds of butterfat were 16.4, and the price paid to Mr. Berge was 40 cents per pound. The amount of the check issued to Mr. Berge was $6.56, and the transportation was 17 cents, and the price paid Mr. Berge was 40 cents per pound of butterfat.

"V. That on the 17th day of July, 1942, the Fairmont Creamery Company at Devils Lake, North Dakota, at their manufacturing plant, purchased from one Donelly Zentz, of Cando, North Dakota, one can of No. 1 cream. That the net pounds of cream in the can were 39, the test was 41, the pounds of butterfat 16, and the price paid by Fairmont Creamery Company was 40 cents per pound of butterfat.

That the cost of transportation on the can of cream sold to the Fairmont Creamery Company's manufacturing plant, at Devils Lake, North Dakota, was 17 cents.

"VI. That on July 17, 1942, one F. Zbytouski sold to the Fairmont Creamery Company, at Devils Lake, North Dakota, at its buying station, one can of No. 1 cream. That the can contained 36 pounds net of cream, the test was 37, the pounds of butterfat in the can were 13.3, the price paid to Mr. Zbytouski was 37 cents per pound of butterfat. The total amount paid to the said F. Zbytouski for said can of cream was $4.92.

"VII. That on July 17, 1942, one S. Lee sold to the Fairmont Creamery Company at its buying station in Devils Lake, North Dakota, one can of No. 1 cream. That the net pounds of cream in the can were 35, the test was 35, and the pounds of butterfat in the can were 12.2. That the price paid to Mr. Lee was 37 cents per pound of butterfat, and the total check paid for the cream was $4.51.

"VIII. That the net price paid to Henry Berge after deducting the cost of transportation on the purchase made from the said Henry Berge by the Fairmont Creamery Company at Devils Lake, North Dakota, was 39 cents per pound of butterfat, and the net price paid to Donelly Zentz on the purchase made from him by the Fairmont Creamery Company on the 17th day of July, 1942, after deducting the cost of transportation, was 38.9 cents per pound of butterfat, while the net price paid to F. Zbytouski and S. Lee by the Fairmont Creamery Company on the 17th day of July, 1942, and on which no transportation costs were involved, was 37 cents per pound of butterfat." Upon these facts the commissioner concluded:

"That the Fairmont Creamery Company, a corporation, violated the provisions of chapter 8, Sess. Laws of 1939, by paying a different price for the same kind and quality of product in the same community, after due allowance for the cost of transportation had been made." and the license was cancelled. Thereupon this proceeding was begun and the district court found for the plaintiff, ordering the reinstatement of the license, and the commissioner appeals.

The record shows the plaintiff follows two purchasing systems. The first deals with purchases made by or through a local buyer, plaintiff's

agent, in each of eighty-five localities and the agent ships the cream to Devils Lake. The other system is to buy from the producer direct and he ships by rail to the vendee. The vendor may sell either way. The latter method was the one adopted by two Cando vendors—Berge and Zentz. They shipped their cream to Devils Lake by rail, plaintiff received it at the depot, took the cans, emptied the contents, tested and graded the same, and mailed a check to the sellers at Cando. The purchases of cream from Berge and Zentz originated in Cando, from Cando producers. Hence, these purchases, so far as their nature and character are concerned, are just the same as if the purchases had been made through plaintiff's local buyer at Cando. They were Cando purchases.

The dairy commissioner in his complaint and in his findings, treated the four transactions shown as having been made in Devils Lake, and therefore charged the plaintiff violated the statute by paying two different prices on the same day for four purchases made in Devils Lake.

The decision of the commissioner in cancelling the license rests solely upon the charge made in the complaint and upon his findings of fact deduced from the testimony.

The whole controversy is narrowed to but one issue—does the record show any violation of the provision prohibiting the paying of a higher price to one seller of a community than "is paid to another of the same community"? No other method of violation of the statute is set forth. The statute prohibits discrimination between communities by paying a higher price in one than in the other, after allowances for certain expenses and competition; and discrimination between persons of the same community by paying a higher price to one than to the other. The latter form of discrimination is the only one involved here.

It is clear from the record that there were only two purchases made in Devils Lake—the purchases from Messrs. Zbytouski and Lee. Each seller received the same price. Hence, the charge based upon alleged discrimination in four purchases made in Devils Lake is not sustained and the judgment of the lower court is affirmed.

Morris, Ch. J., and Christianson, Burke, and Nuessle, JJ., concur.